RMED INTERNATIONAL, INC., Plaintiff,

v.

SLOAN'S SUPERMARKETS, INC. and John A. Catsimatidis, Defendants.

No. 94 Civ. 5587 (PKL).

United States District Court, S.D. New York.

March 3, 1995.

Arthur R. Lehman, Lehman & Gikow, P.C., New York City.

Jonathan Honig, Lowenthal, Landau, Fischer & Bring, P.C., New York City.

## MEMORANDUM ORDER

LEISURE, District Judge:

This is an action for securities fraud violations. Plaintiff, RMED International, Inc. ("RMED"), is a Colorado corporation.[1] Defendant, Sloan's Supermarkets, Inc. ("Sloan's"), is a Delaware corporation with its principal place of business in New York, New York. Defendant, John A. Catsimatidis ("Catsimatidis"), is and has been the chairman of the board, chief executive officer, treasurer, and 37% shareholder of Sloan's since July 28, 1988,[2] and is and has been at all times relevant hereto, the sole shareholder, president, and chief executive officer of Red Apple Companies, Inc. ("Red Apple"). Red Apple, like Sloan's, is in the supermarket business, and since April 1991, Red Apple has operated twenty-one supermarkets in New York City. Those supermarkets use the name "Sloan's," as well as the names "Red Apple" and "Gristede's."

RMED alleges that defendants violated Section 10(b) of the Securities Exchange Act of 1934, 15 U.S.C. § 78j (1983) ("SEA"), and Rule 10b–5 promulgated thereunder, by failing to disclose to its shareholders and investors that defendants were targets of an investigation by the United States Federal Trade Commission ("FTC") concerning the illegal concentration in New York City of supermarkets owned or controlled by Catsimatidis.

Defendants move to dismiss the complaint claiming that plaintiff failed to plead fraud with particularity in accordance with Rule 9(b) of the Federal Rules of Civil Procedure. Specifically, defendants claim that plaintiff, in alleging violations of § 10(b) and Rule 10b–5 of the SEA, failed adequately to plead scienter. Defendants also move to dismiss the plaintiff's state law claims for lack of subject matter jurisdiction.

For the reasons stated below, the motion is denied in its entirety.

## BACKGROUND

Since March 1993, Sloan's has been operating supermarkets in New York City. Prior to 1991, all New York City supermarkets named "Sloan's" were owned by Old Sloan's. In April 1991, Old Sloan's sold 21 Sloan's supermarkets to Red Apple. It was at this point that Old Sloan's changed its name to CKMR.

In September 1991, the Attorney General's Office of the State of New York, the Antitrust Bureau, and the FTC began to investigate whether the purchase of the 21 supermarkets by Red Apple violated the antitrust laws and whether Red Apple and Catsimatidis should be required to divest themselves of certain of their Sloan's supermarkets.

On December 12, 1992, Sloan's, under its prior name of Designcraft, entered into an agreement with CKMR to acquire 11 Sloan's supermarkets in New York City. Those supermarkets were actually acquired in March 1993. It was at this point that Designcraft changed its name to Sloan's Supermarkets, Inc., the defendant herein. Thus, from April 1991 to the present, Red Apple has operated 21 Sloan's supermarkets and from March 1993 to the present, Sloan's has operated 11 Sloan's supermarkets in New York City.

During the period from November 18, 1993 through December 21, 1993, RMED acquired, in public trade, 226,000 shares of Sloan's stock at prices ranging from $7.75 to $11.25 per share. RMED sold almost all of these shares between December 29, 1993 and July 29, 1994.

---

1. Plaintiff sues individually and also purports to represent a class of purchasers of Sloan's Supermarkets, Inc. stock.

2. Prior to 1993, Sloan's was known by its former name, Designcraft Industries, Inc. ("Designcraft"). Designcraft, which became a public company in 1968, changed its name to Sloan's Supermarkets, Inc. in 1993. In addition, prior to 1991, another company used the name Sloan's Supermarkets, Inc. For simplicity, the original Sloan's Supermarkets, Inc., which is not a party to this action, will be referred to as "Old Sloan's." Old Sloan's changed its name to CKMR Corporation ("CKMR") in 1991.

Catsimatidis, as chairman of the board, chief executive officer, treasurer, and 37% shareholder in Sloan's, and as sole shareholder, president, and chief executive officer of Red Apple, was aware of the FTC investigation. From 1991 to 1994, Catsimatidis engaged in discussions with the FTC concerning the possible divestiture of certain Sloan's supermarkets by Sloan's and Red Apple. Nevertheless, between February 28, 1993 and January 14, 1994, Sloan's communicated with its shareholders and made a number of SEC filings without ever disclosing the existence of the ongoing FTC investigation. In particular, one annual report stated that Sloan's would "continue to actively seek additional businesses preferably within the food industry." Complaint ("Comp.") ¶ 17.

On May 27, 1994, the FTC issued a complaint against Sloan's, Red Apple and Catsimatidis alleging antitrust violations and seeking divestiture of either Sloan's or Red Apple.[3]

Plaintiff notes that the closing price of Sloan's stock on May 26, 1994, the day before the issuance of the FTC complaint, was $6.13 per share. It further notes that on June 1, 1994, the day before the public announcement of the FTC complaint, the price of the stock had fallen to $5.75 per share. Lastly, plaintiff observes that the stock price continued to decline, and on July 18, 1994, the price was $4.00 per share.

RMED alleges that Sloan's violated Section 10(b) of the SEA and Rule 10b–5 promulgated thereunder by (1) failing to disclose the existence of the FTC investigation, (2) falsely stating that Sloan's would seek to acquire additional business in the food industry, and (3) failing to disclose the possibility that Sloan's would be divested of some of its supermarkets or be restricted from acquiring Red Apple supermarkets.

Plaintiff alleges that these representations were material, false, knowing and made with an intent to deceive. Plaintiff further contends that it relied on these purportedly false representations to its detriment, and it now seeks recovery.

## DISCUSSION

### I. Federal Claims

Federal Rule of Civil Procedure 12(b)(6) provides for the dismissal of an action when a plaintiff has failed to state a claim upon which relief can be granted. In reviewing a motion to dismiss, the court must read the complaint generously, and draw all inferences in favor of the pleader. *See Cosmas v. Hassett,* 886 F.2d 8, 11 (2d Cir.1989). Therefore, "the court should not dismiss the complaint for failure to state a claim 'unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.' " *Ricciuti v. N.Y.C. Transit Authority,* 941 F.2d 119, 123 (2d Cir.1991) (quoting *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 102, 2 L.Ed.2d 80 (1957)).

Defendants, charged with securities fraud under § 10(b) and Rule 10b–5, seek dismissal of the complaint for failure to plead scienter adequately. To state a cause of action under Rule 10b–5, a plaintiff must plead that, " 'in connection with the purchase or sale of securities,' the defendant[s], acting with scienter, made a false material representation or omitted to disclose material information and that plaintiff's reliance on defendant's action caused [plaintiff] injury." *In re Time Warner Inc. Sec. Lit.,* 9 F.3d 259, 264 (2d Cir. 1993), *cert. denied,* —— U.S. ——, 114 S.Ct. 1397, 128 L.Ed.2d 70 (1994) (citation omitted); *see also Basic Inc. v. Levinson,* 485 U.S. 224, 230–31, 108 S.Ct. 978, 982–83, 99 L.Ed.2d 194 (1988). Defendants' only contention in this motion is that plaintiff failed to plead scienter with sufficient particularity to satisfy Rule 9(b) of the Federal Rules of Civil Procedure ("Rule 9(b)").

---

**3.** The FTC's formal complaint stated that it would issue an order, "requiring the divestiture of nine Sloan's supermarkets, including four supermarkets owned by defendant Sloan's, *or, in the alternative,* the divestiture of Red Apple or Gristede's supermarkets located nearest each of certain Sloan's supermarkets and [ ] prohibiting Sloan's, Red Apple, Catsimatidis, for a period of ten years, from merging with or acquiring any stock or assets of, any supermarket in New York County without prior approval of the FTC." Plaintiff's Memorandum of Law in Opposition to Defendants' Motion to Dismiss ("Pl. Opp.") at 11; Comp. ¶¶ 25–27 (emphasis added).

Rule 9(b) requires that "[i]n all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity;" but "malice, intent, knowledge, and other condition of mind of a person may be averred generally." To satisfy the particularity requirement of Rule 9(b), an allegation of fraud "should state the contents of the communications, who was involved, where and when they took place, and [explain] why they were fraudulent." *Bay State Milling Co. v. Terranova Bakers Supplies Corp.*, 871 F.Supp. 703, 707 (S.D.N.Y.1995) (Leisure, J.) (quoting *Mills v. Polar Molecular Corp.*, 12 F.3d 1170, 1175–76 (2d Cir.1993)). Although under Rule 9(b) a plaintiff need only aver intent generally, it is settled law in the Second Circuit that securities fraud plaintiffs are required to plead facts that raise a "strong inference" of fraudulent intent. *See, e.g., In re Time Warner*, 9 F.3d at 268; *O'Brien v. National Property Analysts Partners*, 936 F.2d 674, 676 (2d Cir.1991); *Beck v. Manufacturers Hanover Trust Co.*, 820 F.2d 46, 50 (2d Cir. 1987), *cert. denied* 484 U.S. 1005, 108 S.Ct. 698, 98 L.Ed.2d 650 (1988), *overruled on other grounds by United States v. Indelicato*, 865 F.2d 1370 (2d Cir.), *cert. denied*, 491 U.S. 907, 109 S.Ct. 3192, 105 L.Ed.2d 700 (1989).

In order to satisfy the "strong inference" test without direct knowledge of the defendant's state of mind, the Second Circuit has indicated two approaches by which scienter may be adequately pled. "The first approach is to allege facts establishing a motive to commit fraud and an opportunity to do so." *In re Time Warner*, 9 F.3d at 269. "The second approach is to allege facts constituting circumstantial evidence of either reckless or conscious behavior" from which an intent or scienter may be inferred. *Id.* Therefore, in the instant motion, plaintiff has adequately pled scienter with sufficient particularity if the complaint either establishes defendants' motive for committing fraud and an opportunity to do so, or in the alternative, identifies circumstantial evidence establishing "reckless or conscious behavior."

The complaint clearly alleges acts sufficient to establish that defendants had a motive to commit fraud and had an opportunity to do so. The complaint states that Catsimatidis, for the entire period of the FTC investigation, was the president and sole shareholder of Red Apple. He was also chairman of the board, chief executive officer, treasurer and 37% shareholder of Sloan's. In these capacities, Catsimatidis had control over and intimate knowledge of Sloan's business. Comp. ¶14; Pl. Opp. at 18. Even though, as defendants argue, Sloan's may have been unable to predict the exact outcome of the FTC investigation, the facts in the complaint sufficiently allege that Catsimatidis knew that Sloan's was in potential jeopardy of either divestiture or restrictions on the future acquisition of supermarkets in New York City or both. As such, the complaint adequately demonstrates that Catsimatidis and Sloan's had a motive to maintain Sloan's appearance of financial health to both its existing shareholders and its potential investors. Furthermore, by failing to disclose the existence of the FTC investigation in the SEC filings or the communications to shareholders, Catsimatidis and Sloan's had the "opportunity" to commit the alleged fraud.

Moreover, even if plaintiff had failed to establish motive to commit fraud and an opportunity to do so, plaintiff has alleged facts that give rise to a strong inference of reckless or conscious behavior. Conscious behavior, for § 10(b) purposes, is found when there is either an "intent to defraud, knowledge of the falsity or a reckless disregard for the truth." *Ades v. Deloitte & Touche*, 799 F.Supp. 1493, 1498–99 (S.D.N.Y.1992) (citing *Breard v. Sachnoff & Weaver, Ltd.*, 941 F.2d 142, 144 (2d Cir. 1991)). The inference of recklessness necessary to satisfy the scienter requirement can be shown by "facts demonstrating ... that the defendant disseminated material 'knowing [it was] false or that the method of preparation was so egregious as to render [the] dissemination reckless.' " *Ades v. Deloitte & Touche*, 799 F.Supp at 1499 (citation omitted).

Applying these standards, this Court finds that the complaint satisfies the particularity requirement of Rule 9(b). The following al-

leged facts meet the requisite Rule 9(b) showing of both "conscious behavior" and "recklessness" and thus give rise to a "strong inference" of fraudulent intent or scienter:

(1) Defendants' knew of the FTC investigation at the time RMED acquired 226,600 shares of Sloan's stock. Comp. ¶¶ 13, 15, 23.

(2) Defendants engaged in a continuous and prolonged pattern of misrepresentations and omissions in their SEC filings and communications to their shareholders by:

fail[ing] to disclose the existence of the ongoing investigation by the FTC and the discussions between the FTC and Catsimatidis about the objection by the FTC to the concentration of ownership of supermarkets by entities owned or controlled by Catsimatidis and the possible divestiture by Sloan's and Red Apple of certain of their Sloan's supermarkets

Comp. ¶¶ 16–22.

(3) Catsimatidis had control over and intimate knowledge of Sloan's business, and therefore had a strong motive to keep Sloan's prospects appearing healthy. Comp. ¶ 14; Pl. Opp. at 18.

Defendants contend that the alleged facts do not give rise to an inference that they acted with conscious behavior or recklessness. They assert that "there is nothing to indicate that Sloan's will be affected by the resolution of the FTC complaint because the FTC simply seeks divestiture of some stores by *either* Red Apple or Sloan's." Defendants' Memorandum of Law in Support of Their Motion to Dismiss the Complaint ("Def. Mem.") at 9–10 (emphasis added). The Court finds this argument unpersuasive. The FTC complaint alleges antitrust violations and seeks as relief divestment of Sloan's. Consequently, the pleadings satisfactorily allege facts to raise an inference of scienter under § 10(b).

## II. State Law Claims

Defendants' contend that if the federal claims are dismissed before trial, the state law claims should be dismissed as well. This Court, having denied defendants' motion to dismiss the federal claims, also denies defen-

dants' motion to dismiss the state law claims for lack of jurisdiction.

## CONCLUSION

For the reasons stated above, defendants' motion to dismiss the action for failure to plead fraud with particularity, pursuant to Rule 9(b), and to dismiss the state law claims is denied in its entirety. The parties are advised to appear in Courtroom 1106 for a pre-trial status conference at 2:00 p.m. on April 21, 1995.

**SO ORDERED.**